State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 27344175
Date: Sep 30 2009  6:16PM
Mark Harper, Clerk

**GEORGIA, FULTON COUNTY**

DO NOT WRITE IN THIS SPACE

**STATE COURT OF FULTON COUNTY**

Civil Division

CIVIL ACTION FILE NO. 2009 E V 008 319 J

\*\*\* **ATTORNEYS NOTE-- DESIGNATED E-FILED CASE** \*\*\*\*
CONTACT THE COURT AT 404.730.5040 AND
LEXISNEXIS CUSTOMER SUPPORT AT 1.888.529.7587

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $_____ |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $_____ |
| [X] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $_____ |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $_____ |
| [ ] SPECIAL LIEN | |
| \*\*\*\*\*\*\*\*\*\*\*\* | |
| [X] NEW FILING | |
| [ ] RE-FILING: PREVIOUS CASE NO. _____ | |

MARILYN SINKWICH, as Administratrix of the
Estate of SADIE MILLER ANDERSON,

_____
Plaintiff's Name, Address, City, State, Zip Code

vs.

PARKWOOD LIVING CENTER, LLC and
HMR ADVANTAGE HEALTH SYSTEMS, INC.

_____
Defendant's Name, Address, City, State, Zip Code

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: **HMR ADVANTAGE HEALTH SYSTEMS, INC.**

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: Thomas D. Trask – Parks, Chesin & Walbert, P.C.

Address: 75 Fourteenth Street, 26th Floor

City, State, Zip Code: Atlanta, Georgia 30309 _____ Phone No.: (404) 873-8000

An answer to the complaint which is herewith served on you, within thirty (30) days after service on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSE MAY BE MADE & JURY TRIAL DEMANDED,** if desired, in the Clerk's Office at 185 Central Ave., S.W., Room TG100, Atlanta, GA 30303.

This _____ *Donna Jones-Frederick, Chief Deputy Clerk*

If the sum claimed in the suit, or value of the property sued for, is $300.00 or more Principal, the defendant must admit or deny the paragraphs of plaintiff's petition by making written Answer. Such paragraphs undenied will be taken as true. If the plaintiff's petition is sworn to, or if suit is based on an unconditional contract in writing, then the defendant's answer must be sworn to.

If the principal sum claimed in the suit, or value of the property sued for, is less than $300.00, and is on a note, unconditional contract, account sworn to, or the petition sworn to, defense must be made by filing a sworn answer setting up the facts relied on as a defense.

### SERVICE INFORMATION:

Served , this _____ day of _____, 20_____.    _____
                                                            DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:

We, the jury, find for _____

_____

This _____ day of _____, 20_____.    _____ Foreperson

(STAPLE TO FRONT OF COMPLAINT)

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 27344175
Date: Sep 30 2009 6:16PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MARILYN SINKWICH, as Administratrix of the Estate of SADIE MILLER ANDERSON, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: |
| vs. | ) ) | 2009 EV 008319 U |
| PARKWOOD LIVING CENTER, LLC. and HMR ADVANTAGE HEALTH SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Comes Now, Plaintiff Marilyn Sinkwich, as Administratrix of the Estate of Sadie

Miller Anderson, and files this Complaint showing the Court as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Defendant Parkwood Living Center, LLC., hereinafter "Parkwood," is a South

Carolina limited liability company doing business in Georgia and registered and existing

under the laws of the State of Georgia as a foreign limited liability company and is

subject to the jurisdiction and venue of this court. Service of process may be perfected on

Parkwood through its registered agent for service, Dale Morris at 1201 Peachtree Street

NE, Atlanta, Fulton County, Georgia 30361.

2.

Parkwood is a wholly-owned subsidiary of HMR Advantage Health Systems, Inc. who owns and operates a chain of nursing home facilities.

3.

Defendant HMR Advantage Health Systems, Inc., hereinafter referred to as "HMR," is a South Carolina corporation doing business in Georgia.  HMR is subject to the jurisdiction and venue of this court under O.C.G.A § 9-10-91.  Service of process may be perfected on HMR through its registered agent for service, John F. Swift at 101 Grace Drive, Easley, SC 29640.

4.

Jurisdiction and venue are proper in this Court.

## FACTS

5.

Plaintiff Marilyn Sinkwich is the daughter of Sadie Miller Anderson (hereinafter "Sadie Anderson"), deceased and the Administratrix of the Estate of Sadie Anderson.

6.

From May 1, 2006, until December 15, 2007, Sadie Anderson received long term care at Parkwood, owned and operated by HMR.

7.

Sadie Anderson's mobility was limited and she required assistance to move about.

8.

Sadie Anderson relied on Parkwood and HMR employees to assist her in moving between her wheelchair and bed.

9.

It was the responsibility of Parkwood and HMR to provide proper assistance to Sadie Anderson in accordance with proper technique and safety standards.

10.

Prior to November 25, 2007, Sadie Anderson consistently walked about thirty to forty feet everyday with the assistance of a roller walker, transferred well between her wheelchair and her bed, and was is high spirits.

11.

Prior to November 25, 2007, Sadie Anderson was able to perform at least fifty percent of her own lift transfer.

12.

On November 25, 2007 employees of Parkwood and HMR failed to appropriately transfer Sadie Anderson from her chair to her bed.

13.

At approximately 10 p.m. on November 25, 2007, Sadie Anderson's foot became caught during the transfer, causing her to fall.

14.

The Parkwood and HMR employees performing the transfer did not notify nursing

staff of the fall until at least five hours later, on November 26, 2007 at approximately 3

a.m..

15.

At least twelve hours after the fall, Sadie Anderson was still complaining of pain

and was finally seen by a nurse at approximately 11 a.m. on November 26, 2007, the day

following the fall.

16.

On November 26, 2007, Sadie Anderson's primary care physician, Dr. R.V.

Dronavalli M.D., ordered an x-ray of Sadie Anderson's right knee.

17.

Sadie Anderson's primary care physician was notified of the results of the x-ray

and informed Parkwood employees to send Sadie Anderson to the Emergency room.

18.

Approximately eighteen hours after Parkwood and HMR employees failed to

appropriately transfer Sadie Anderson from her wheelchair to her bed, she was taken to

the emergency room at Eastside Medical Center for evaluation and treatment.

19.

Dr. Sami Khan M.D. determined that Sadie Anderson suffered a fracture of her

right femur just above her knee as a result of her fall.

20.

Parkwood and HMR employees' failure to appropriately transfer Sadie Anderson from her wheelchair to her bed resulted in the fracture of her right femur.

21.

Sadie Anderson remained at Eastside Medical Center for a pre-operative evaluation performed on November 27, 2007.

22.

On November 28, 2007, Sadie Anderson underwent surgery at Emory Medical Center to repair the fracture of her right femur.

23.

Sadie Anderson was discharged from Emory Medical Center and returned to Parkwood on November 30, 2007.

24.

During Sadie Anderson's re-admission screening on November 30, 2007, Parkwood and HMR employees failed to note that she could no longer perform fifty percent of her own lift transfer and therefore failed to designate that Sadie Anderson required a sling lift for transfers.

25.

On December 15, 2007, Parkwood and HMR employees again failed to appropriately transfer Sadie Anderson from her bed to her wheelchair.

26.

As a result of Parkwood and HMR employees' failure to appropriately transfer Sadie Anderson, her knee buckled and she fell.

27.

At 11:15 a.m., Parkwood and HMR employees notified Sadie Anderson's daughter, Phyllis Jones, of the incident.

28.

At 12:00 p.m. Sadie Anderson's daughter arrived at Parkwood and requested that Sadie Anderson be taken to the emergency room.

29.

Sadie Anderson was taken to the emergency room at Eastside Medical Center on December 15, 2007 for evaluation of her injury.

30.

Upon evaluation of her injury, it was determined that Sadie Anderson suffered a fracture of her left femur.

31.

On December 17, 2007, Sadie Anderson underwent surgery for a second time in less than a month to repair a fracture to her femur resulting from Parkwood and HMR employees' failure to appropriately transfer Sadie Anderson between her bed and wheelchair.

32.

On December 20, 2007, Sadie Anderson was discharged from Eastside Medical Center to Ashton Hall Assisted Living Center.

33.

As a result of Parkwood and HMR employees' failure to appropriately transfer Sadie Anderson between her bed and her wheelchair, she suffered fractures of both her right and left femur and had to undergo two surgeries in less then a month to repair these fractures.

## COUNT I - NEGLIGENCE

34.

The allegations contained in paragraphs 1 through 33 are realleged and incorporated by reference as if fully set forth herein.

35.

Parkwood and HMR employees were negligent by failing to appropriately transfer Sadie Anderson between her bed and wheelchair.

36.

Parkwood and HMR employees were negligent by failing on at least one occasion to report the incident to nursing employees in a timely fashion.

37.

Parkwood and HMR employees were negligent by failing to respond to notification of Sadie Anderson's fall and complaints of pain/injury in a timely fashion.

Page -7-

38.

Parkwood and HMR employees were negligent by failing to correctly complete the lift screening after Sadie Anderson returned to Parkwood on November 30, 2007 following surgery to repair a fractured femur after having been dropped by Parkwood employees.

39.

If Parkwood and HMR employees had appropriately transferred Sadie Anderson between her wheelchair and her bed then Sadie Anderson's foot would not have been caught during the transfer resulting in a fracture to her right femur on November 25, 2007.

40.

If Parkwood and HMR employees had reported the incident on November 25, 2007 in a timely fashion, Sadie Anderson would not have had to suffer in pain for additional time before being taken to the emergency room for evaluation and treatment.

41.

If Parkwood and HMR employees responded in a timely fashion to the notification of Sadie Anderson's fall, Sadie Anderson would not have had to suffer in pain for additional time from the report of the incident until she was taken to the emergency room for evaluation and treatment.

42.

If Parkwood and HMR agents/employees had correctly completed the lift screen

on November 30, 2007, then a sling lift would have been required to transfer Sadie Anderson safely between her wheelchair and her bed.

43.

If Parkwood and HMR agents/employees would have used a sling lift in transferring Sadie Anderson between her bed and her wheelchair, then Sadie Anderson's knee would not have buckled on December 15, 2007 resulting in a fracture to her left femur.

44.

If Parkwood and HMR agents/employees would have appropriately transferred Sadie Anderson between her bed and her wheelchair, even if her knee had buckled, she would not have fallen on December 15, 2007 resulting in a fracture to her left femur.

45.

The Defendants' negligence was the direct and proximate cause of Sadie Anderson's injuries.

46.

All negligent acts and/or omissions of Parkwood personnel are imputed to Parkwood.

47.

Parkwood and HMR are liable to the Plaintiff for all damages caused by the acts or omissions of Parkwood agents/employees via the doctrine of *respondeat superior*.

48.

All negligent acts and/or omissions of Parkwood are imputed to HMR.

49.

HMR is liable to the plaintiff for all damages caused by the acts or omissions of Parkwood as the agent of HMR.

50.

Marilyn Sinkwich, daughter of Sadie Anderson, has been dully appointed as the Administratrix of the Estate of Sadie Miller Anderson.

51.

As a direct and proximate cause of the negligence of the Defendants, Sadie Anderson suffered physical injuries and incurred medical expenses exceeding $136,000.00.

52.

Marilyn Sinkwich, as the Administratrix of the Estate of Sadie Anderson, is entitled to recover all damages from the Defendants that were directly and proximately caused by their negligence, including an award for Sadie Anderson's pain and suffering and medical expenses incurred.

53.

The Defendants are jointly and severally liable to Plaintiff Marilyn Sinkwich, as administratrix of the Estate of Sadie Anderson, for all damages directly and proximately caused by their negligence.

## COUNT II - PROFESSIONAL NEGLIGENCE

54.

The allegations contained in paragraphs 1 through 53 are realleged and incorporated by reference as if fully set forth herein.

55.

While acting as an agent(s) and/or employee(s) of Parkwood and HMR, Parkwood and HMR employees did not exercise the degree of care and skill required by the medical profession generally, under like conditions and circumstances similar to those involved in the medical care and treatment rendered to Sadie Anderson on November 25 and 26, 2007 and December 15, 2007.

56.

Parkwood and HMR employees deviated from the standard of care required of nurses, nursing assistants, and nursing home staff by failing to appropriately transfer Sadie Anderson between her bed and wheelchair.

57.

Parkwood and HMR employees deviated from the standard of care required of nurses, nursing assistants, and nursing home staff by failing on at least one occasion to report the incident to nursing employees in a timely fashion.

58.

Parkwood and HMR employees deviated from the standard of care required of nurses, nursing assistants, and nursing home staff by failing to respond to notification of

Page -11-

Sadie Anderson's fall and complaints of pain/injury in a timely fashion.

59.

Parkwood and HMR employees deviated from the standard of care required of nurses, nursing assistants, and nursing home staff by failing to correctly complete the lift screening after Sadie Anderson returned to Parkwood on November 30, 2007 following surgery to repair a fractured femur after having been dropped by Parkwood employees

60.

If Parkwood and HMR employees had appropriately transferred Sadie Anderson between her wheelchair and her bed then Sadie Anderson's foot would not have been caught during the transfer resulting in a fracture to her right femur on November 25, 2007.

61.

If Parkwood and HMR employees had reported the incident on November 25, 2007 in a timely fashion, Sadie Anderson would not have had to suffer in pain for additional time before being taken to the emergency room for evaluation and treatment.

62.

If Parkwood and HMR employees responded in a timely fashion to the notification of Sadie Anderson's fall, Sadie Anderson would not have had to suffer in pain for additional time from the report of the incident until she was taken to the emergency room for evaluation and treatment.

Page -12-

63.

If Parkwood and HMR agents/employees had correctly completed the lift screen on November 30, 2007, then a sling lift would have been required to transfer Sadie Anderson safely between her wheelchair and her bed.

64.

If Parkwood and HMR agents/employees would have used a sling lift in transferring Sadie Anderson between her bed and her wheelchair, then Sadie Anderson's knee would not have buckled on December 15, 2007 resulting in a fracture to her left femur.

65.

If Parkwood and HMR agents/employees would have appropriately transferred Sadie Anderson between her bed and her wheelchair, even if her knee had buckled, she would not have fallen on December 15, 2007 resulting in a fracture to her left femur.

66.

The failure of the Defendants to comply with the applicable standards of care required under like conditions and circumstances similar to those involved in the care and treatment of Sadie Anderson were the direct and proximate causes of Sadie Anderson's injuries.

67.

All negligent acts and/or omissions of Parkwood personnel are imputed to Parkwood.

Page -13-

68.

Parkwood and HMR are liable to the Plaintiff for all damages caused by the acts or omissions of Parkwood agents/employees via the doctrine of *respondeat superior*.

69.

All negligent acts and/or omissions of Parkwood are imputed to HMR.

70.

HMR is liable to the plaintiff for all damages caused by the acts or omissions of Parkwood as the agent of HMR.

71.

Marilyn Sinkwich, daughter of Sadie Anderson, has been dully appointed as the Administratrix of the Estate of Sadie Miller Anderson.

72.

As a direct and proximate cause of the negligence of the Defendants, Sadie Anderson suffered physical injuries and incurred medical expenses exceeding $136,000.00.

73.

Marilyn Sinkwich, as the Administratrix of the Estate of Sadie Anderson, is entitled to recover all damages from the Defendants that were directly and proximately caused by their negligence, including an award for Sadie Anderson's pain and suffering and medical expenses incurred.

74.

The Defendants are liable to Plaintiff Marilyn Sinkwich, as administratrix of the

Estate of Sadie Anderson, for all damages directly and proximately caused by their negligence.

75.

Plaintiff Marilyn Sinkwich as Administratrix of the Estate of Sadie Miller, has filed the affidavit of Elizabeth Perez, RN (Exhibit "A") with this complaint in accordance with the provisions of O.C.G.A. § 9-11-9.1. The original affidavit is attached hereto and incorporated herein.

### COUNT III - PUNITIVE DAMAGES

76.

Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

77.

The acts and omissions of Parkwood and HMR, reiterated above, as well as opther acts and omissions through their agents and employees, were done willfully, wantonly, intentionally, and in reckless and callous disregard for Sadie Miller Anderson, entitling Plaintiffs to an award of punitive damages against Defendant pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE,** the Plaintiffs demand and pray for the following:

(A)     A trial by jury;

(B)     Judgment against all the Defendants for damages owed to the estate Sadie Miller in an amount to be determined by an impartial jury;

Page -15-

(C)     An award of punitive damages in an amount to be determined by the

        enlightened conscious of the jury as evidence will show to be just and

        proper; and

(D)     Any other further relief that the Court deems just and proper.

                                             /s/  Thomas D. Trask
                                             Thomas D. Trask
                                             State Bar No. 715620
                                             David F. Walbert
                                             State Bar No. 730450

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, Georgia 30309
ph: (404) 873-8000
fax: (404) 873-8050

Raymond V. Giudice
State Bar No. 296272
HART & GIUDICE, LLC
1445 East Paces Ferry Road
Atlanta, GA 30326

*ATTORNEYS FOR PLAINTIFFS*

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 27344175
Date:  Sep 30 2009  6:16PM
Mark Harper, Clerk

## AFFIDAVIT OF ELIZABETH PEREZ, R.N.

Personally appeared before the undersigned officer, duly authorized by law to administer oaths, comes Elizabeth Perez, R.N., who after first being duly sworn, states as follows:

### I.

My name is Elizabeth Perez, R.N.   I am over eighteen years of age, under no legal disability, and have personal knowledge sufficient to make this affidavit

### II.

I have been licensed to practice registered nursing in the State of Georgia since 2000.  I have been licensed as a licensed practical nurse since 1990.  Attached hereto is a true copy of my curriculum vitae.

### III.

Through training, education and experience, I have personal knowledge of the standards of care employed by nursing homes generally, as well as the standards of care generally employed by nurses and nursing assistants, under like conditions and circumstances similar to those involved in the care and treatment of Sadie Anderson on November 25, November 26, November 30, and December 15, 2007.

### 4.

In formulating my opinions expressed herein, I have reviewed and relied upon the following records and information:

(A)   Medical records from Emory Eastside Hospital;
(B)   Medical records from Georgia Pulmonary Group;
(C)   Medical records from Lambersons Home Care;
(D)   Medical Records from Parkwood Living Center;

Page -1-

Exhibit "A"

(E)   Medical records from Pro Care EMS;
(F)   Medical records from Resurgens Orthopedic;
(G)   Medical records from To Your Health Medical & Fitness; and
(H)   Several Disclosure of Ownership and Control forms understood to be
      completed by the owners and operators of Parkwood Living Center and
      filed with the Georgia Department of Human Resoures;

5.

My opinions in this affidavit are based upon my education, specialized training,
and experience in practicing nursing, my medical and personal knowledge, and the above-
referenced medical records and information.

6.

At the time of the deviations from the standard of care by Parkwood Living
Center, LLC. (hereinafter "Parkwood"), Parkwood personnel, HMR Advantage Health
Systems, Inc. (hereinafter "HMR"), and HMR personnel referenced herein (November
25, November 26, November 30, and December 15, 2007), I was practicing nursing in the
State of Georgia and was licensed to practice nursing in that State.

7.

At the time of the deviations from the standard of care by Parkwood, Parkwood
personnel, HMR, and HMR personnel referenced herein, I had actual professional
knowledge and experience in the area of nursing as a result of having been regularly
engaged in the active practice of nursing for over eighteen years.  Specifically I was
regularly engaged (1) in performing lift assesments of patients either by performing them
myself or supervising and/or instructing nursing staff on how to correctly complete a
patient's lift assesment and (2) the proper techniques and safety standards for the

transferring of patients between their bed and wheelchair either by performing the transfer myself or supervising and/or instructing nursing staff in the proper techniques and safety standards for the transferring of patients for at least fifteen years preceeding November 25, November 26, November 30, and December 15, 2007.

8.

Since 1990, I have been regularly engaged in the active practice of nursing with sufficient frequency to establish an appropriate level of knowledge in performing the procedures and rendering treatment which was rendered to Sadie Anderson by Parkwood, Parkwood personnel, HMR, and HMR personnel on November 25, November 26, November 30, and December 15, 2007.

9.

For the purposes of this affidavit, I have been asked to assume that at the time of the treatment and care of Sadie Anderson, Parkwood personnel were agents or employees of Parkwood and HMR personnel were agents or employees of HMR.

10.

In my opinion, Parkwood personnel and HMR personnel, while acting as agents and/or employees of Parkwood and HMR, respectively, did not exercise the degree of care and skill employed by nurses and the medical profession generally, and nursing home staff in particular, under like conditions and circumstances similar to those involved in the medical care and treatment provided to Sadie Anderson on November 25, November 26, November 30, and December 15, 2007 by: (1) failing to properly transfer Sadie Anderson between her bed and her wheelchair on November 25 and December 15,

2007; (2) failing to promptly report Sadie Anderson's fall on November 25, 2007; (3)

failing to promptly respond to the report of Sadie Anderson's fall on November 26, 2007;

and (4) failing to correctly complete Sadie Anderson's lift assessment on November 30,

2007.

11.

With respect to the foregoing deviations from the standard of care by Parkwood

and HMR personnel as agents and/or employees of Parkwood and HMR, respectively, the

factual basis for the claimed deviations from the standard of care is as follows:

On November 25, 2007 at approximately 10 p.m. Parkwood and/or HMR

personnel were transferring Sadie Anderson from her wheelchair to her bed. During the

transfer, Parkwood and/or HMR personnel failed to follow established techniques,

procedures, and safety standards for the transferring of patients and Sadie Anderson's

foot became caught and she fell. Parkwood and/or HMR personnel failed to report the

fall until approximately 3 a.m. on November 26, 2007, at least five hours after the

incident occurred. After the report of the fall, Parkwood and/or HMR nursing staff

waited an additional eight hours on November 26, 2007 before evaluating Sadie

Anderson's condition and did so only because she complained of pain. The time between

the report of the fall and the evaluation by nursing staff was over thirteen hours.

After evaluating Sadie Anderson, Parkwood and/or HMR nursing staff contacted

Sadie Anderson's primary care physician who ordered an x-ray. Upon review of the x-

ray Sadie Anderson was taken to the ER at Eastside Medical Center at approximately 4

p.m. on November 26, 2007 where she was treated for a fracture to her right femur that

Page -4-

required surgery to repair. Sadie Anderson did not receive treatment for injuries she sustained until at least eighteen hours after the incident occurred.

On November 30, 2007 Sadie Anderson returned to Parkwood and was given a lift assessment. Parkwood and/or HMR personnel failed to correctly complete the assessment and determined that Sadie Anderson did not require a lift for transfers. If the assessment had been completed correctly, Sadie Anderson would have required a sling lift for transfers as she was unable to perform at least fifty percent of her own lift transfer.

On December 15, 2007 Parkwood and/or HMR personnel again failed to correctly transfer Sadie Anderson between her bed and wheelchair. This time her knee buckled and she fell again resulting in a fracture of her left femur that required surgery.

12.

In my opinion, within a reasonable degree of medical certainty, the above-referenced deviations from the standard of care were the proximate cause of Sadie Anderson's injuries and suffering.

13.

In my opinion, within a reasonable degree of medical certainty, had Parkwood, Parkwood personnel, HMR, and HMR personnel complied with the standard of care required of nurses and nursing home staff in general:

(1) Sadie Anderson's foot would not have become caught during the transfer on November 25, 2007 and Sadie Anderson would not have suffered a fracture of her right femur; and

(2) Parkwood and/or HMR staff would have used a sling lift to transfer Sadie

Page -5-

Anderson on December 15, 2007 and her knee would not have buckled and she would not have suffered a fracture of her left femur.

14.

It is not the intent of affiant to include all opinions that she may possess in this affidavit.

Further affiant sayeth not.

Elizabeth R. Perez, R.N.

Sworn to and subscribed before me

this 25th day of September , 2009.

Notary Public

My Commission Expires: May 17, 2012

# Elizabeth R. Tappin-Perez, R.N.

95 HAVENWOOD LANE COVINGTON, GA 30016

404-234-2258

erperez2000@yahoo.com

## OBJECTIVE:

To become a part of an organization committed to delivering quality health care.

## QUALIFICATIONS:

- Proficient with assessment, planning, implementation and evaluation of care.
- Effective communication skills.
- Management experience through organization, delegation, supervision and follow-up.
- Experienced with meeting and exceeding customer and company expectations.

## EXPERIENCE:

08/09 – Present:
A.G.Rhodes Homes at Wesley Woods – **Director of Nursing Services**
- Oversee Operations of a 150 bed subacute and skilled care Nursing Facility
- Administrative management of Nursing Services
- Oversee, organize, evaluate, and direct the Nursing Department in accordance to company standards and Regulatory guidelines.

10/07 – 07/09:
Laurel Baye Health Care of Decatur – **Executive Director of Nursing Services**

- Oversee operations of a 146 bed skilled care Nursing Facility
- Administrative management of Nursing Services
- Organize, evaluate and direct Nursing Services in accordance to regulatory guidelines and optimal patient outcomes
- Review of all potential patient admissions for appropriateness of care
- Oversee Staff in-service training

08/07 – 10/07:
Amedisys Home Health Care, Covington, GA – **RN Area Case Manager**
- Initial, quarterly and review assessments for assigned home care clients
- Coordinate hospital discharges to home setting
- Developed and implemented client plan of care

- Family teaching
- Manage IV infusions, performed dressing changes, performed blood and or specimen draws
- Attended weekly Clinical Standup to report client status
- Coordinated client need for support services – therapies, social services, MD follow-up

## 06/07 – 08/07:
## Park Springs, CRCC – **Interim Home Care Case Manager**
- Oversee CNA Home Health staff of a Retirement Community
- Coordinated with Assisted Living and Skilled Care unit on clients requiring Home Health support
- Performed initial and assessments of physical, mental, emotional and safety needs
- Developed and implemented  Care Plan
- Performed necessary teaching to client, caregivers and support staff
- Communicated to Nurse Practitioner and MD
- Performed and conveyed weekly Utilization Reports to APRN
- Respond to Community emergencies

## 03/07 – 6/07:
## Cobblestone at Park Springs CRCC – **Interim Director of Nursing**
- Oversee operations and plan of care for a 25 bed skilled care unit, 28 bed Assisted Living unit and 15 bed Alzheimers' Memory care unit.
- Insure Regulatory compliance through daily unit rounds and report
- Maintain daily statistics on Skin, Weights and Wounds management programs and insuring proper care plan intervention and implementation
- Insured in-service training  to Nursing Staff
- Monitor and validate Facility Quality Indicators for accuracy and intervention
- Perform Quality Assurance meetings and reviews
- Reviewed daily staffing hours in relation to budget and care needs, control overtime
- Reviewed all potential admissions for appropriateness of care
- Oversee and coordinate MDS assessments
- Reported weekly to Clinical Nurse Consultant, Executive Director and Administrator

## 09/06 – 03/07:
## Cobblestone at Park Springs CRCC – **Assistant Director of Nursing**
- Monitor plan of care for a 25 bed skilled care unit, a 28 bed Assisted Living Unit, and 14 bed Alzheimers' Memory care Unit.
- Assessment of change of condition patients for appropriate Nursing interventions, insured care plan update
- Performed in-service training to Nursing Staff
- Conducted weekly Patient at Risk meetings according to Quality Indicators, Daily and weekly Clinical interdisciplinary Reports
- Managed Nursing schedule to insure 24 hour Nursing coverage
- Report daily to DON

2004 – 2006:
MSI International Healthcare Staffing Agency, Roswell, GA – **Staff RN**
- Replacement RN in area hospitals in Emergency Room, Med.Surg., Rehab, and Telemetry.
- Perform systems assessments, initiate care plan, carry out interventions to include fall, pressure ulcer risk and pain assessments
- Procure height, weight and vital signs
- Administer meds via oral, injection , NGT/GT, and IV route
- Administer Blood products by protocol
- Perform and monitor 12, 5 and 3 lead EKG, report to MD abnormal findings
- Perform dressing changes per MD order and hospital protocol
- Initiate and manage PCA pump per MD order
- Start and maintain IV peripheral access in adult and child
- Perform Blood draws via peripheral, Central lines, Greshong, and PICC lines
- Insert and manage foley and suprapubic catheters
- Perform triage with emergency interventions
- Psychiatric crisis management and stabilization via assessment, observation and med administration by MD order
- Identify and perform patient and family teaching
- Care of the post procedure patient: Cardiac caths, ORIF's, AV shunting, abdominal and thoracic surgeries, craniotomies, and spinal.

2003 – 2004
Westminister Commons Healthcare, Atlanta, GA Assistant – **Director of Nursing**
- Clinical management of a 66 bed skilled care Nursing Facility

2000 – 2003
Buckhead Health and Rehab, Atlanta, GA – **Assistant Director of Nursing**
- Clinical management of 179 bed skilled care and subacute facility

## EDUCATION:

City University of New York – Regents College
- Associate Degree Nursing Program 2000
- Current GA RN License
- Current ACLS/PALS
- Current BCLS
- Trainer the Trainer certificate 1998

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing **NOTICE**

**OF REMOVAL** to be served upon all parties to this action by depositing a copy of

same in the United States mail, postage prepaid, addressed as follows:

Thomas D. Trask, Esq.
Parks, Chesin & Walbert, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, Georgia  30309

Raymond V. Giudice, Esq.
Hart & Giudice, LLC
1445 East Paces Ferry Road
Atlanta, Georgia 30326

This 5th day of November, 2009.

/s/ Jason E. Bring
Jason E. Bring
Georgia Bar No. 082498

ARNALL GOLDEN GREGORY LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363
Telephone:  (404) 873-8500
Facsimile:  (404) 873-8501

2695653v1